J-S50004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.D. A/K/A A.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.B. | : | No. 747 EDA 2017 |

Appeal from the Order Entered February 1, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s):  2012-20761

BEFORE:   PANELLA, J., MOULTON, J., and RANSOM, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 03, 2017**

A.D., a/k/a A.A. ("Mother"), appeals from the February 1, 2017 order in the Court of Common Pleas of Montgomery County which granted, in part, the petition for modification of the existing custody order filed by A.B. ("Father"), with respect to the parties' son, S.B. ("Child"), born in July 2011. We affirm.

For a recitation of the complete factual background and procedural history of this case, we refer the interested reader to the trial court's comprehensive opinion. *See* Trial Court Opinion, 4/17/17, at 1-3.

By way of background, Father filed the petition for modification of the existing custody order on February 24, 2016. The agreed-upon existing order, dated August 1, 2013, in the Court of Common Pleas of Philadelphia County, granted the parties shared legal custody, Mother primary physical

custody, and Father partial physical custody every Tuesday from 7:00 p.m. until Wednesday at 7:00 p.m. and on alternating weekends from Friday at 7:00 p.m. until Monday at 7:00 p.m. In addition, the agreed-upon order permitted Mother to relocate with Child from Haverford, Montgomery County, to Lancaster, Lancaster County. Further, the order transferred venue of the custody case from Philadelphia County to Montgomery County. Father has resided in Gladwyne, Montgomery County, in the Lower Merion School District, since that time.

In the subject petition, Father requested an award of primary physical custody and a determination by the court regarding which school Child will attend for the 2016-2017 school year, when he would be in kindergarten. The court held a protracted custody hearing approximately eleven months later, on January 17, 18, and 20, 2017. Father testified on his own behalf and presented the testimony of Diana S. Rosenstein, Ph.D., the court-appointed custody evaluator; N.B., Father's wife; N.G., a woman whose son is Child's friend; K.E., Father's next-door neighbor; and Patricia Norton, the director of St. Christopher's Day School in Gladwyne, Montgomery County, where Child attended pre-school. Mother testified on her own behalf and presented the testimony of A.W., her friend who lives in Ardmore, Delaware County; D.D.R.D., Child's maternal grandmother; D.A.D., Child's maternal aunt; and C.W.A., Mother's husband.

By order entered on February 2, 2017, the trial court maintained shared legal custody between the parties. The court granted the parties shared physical custody[1] during the remainder of the 2016-2017 school year. Specifically, the court granted Father custody every Wednesday from after school through 7:00 p.m. in the Lancaster area. In addition, the court granted Father custody on multiple weekends set forth in the order. The court granted Mother physical custody at all other times not set forth in the order. For the summer of 2017, the court granted the parties equally shared physical custody on an alternating weekly basis.

Moreover, effective on September 1, 2017, the court granted Father primary physical custody[2] during the school year, when Child would be in first grade. The court directed that Child attend Gladwyne Elementary School in the Lower Merion School District. The court granted Mother partial physical custody[3] during the school year one weekday each week from after

---

[1] The Child Custody Act (the "Act"), 23 Pa.C.S.A. §§ 5321-5340, defines "shared physical custody" as "[t]he right of more than one individual to assume physical custody of the child, each having significant periods of physical custodial time with the child." 23 Pa.C.S.A. § 5322.

[2] We observe that the court did not designate the custody award to Father effective on September 1, 2017, as "primary physical custody." The Act defines "primary physical custody" as the "right to assume physical custody of the child for the majority of time." 23 Pa.C.S.A. § 5322. We deem the court's award to Father as "primary physical custody."

[3] Likewise, the court did not designate the custody award to Mother effective on September 1, 2017, as "partial physical custody." The Act defines "partial
*(Footnote Continued Next Page)*

- 3 -

school through 7:30 p.m. in the Lower Merion area[4] and on alternating weekends. The court directed that, "[t]o every extent possible, Mother's weekend should include those weekends where there are school holidays attached to them." Order, 2/2/17, at ¶ 5(b) (footnote omitted). Beginning in the summer of 2018, the court granted Mother primary physical custody and Father partial physical custody every Wednesday from 4:30 p.m. until 7:00 p.m. and on alternating weekends during the summer. In addition, the court set a holiday schedule.

Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal. The trial court authored a Rule 1925(a) opinion.

On appeal, Mother presents the following issues for our review:

I. Did the [t]rial [c]ourt err and commit an abuse of discretion when the [c]ourt granted, in effect, primary physical custody to . . . Father, including setting forth a change of school schedule

*(Footnote Continued)* ———————————

physical custody" as the "right to assume physical custody of the child for less than a majority of the time." 23 Pa.C.S.A. § 5322. We deem the court's award to Mother as "partial physical custody."

[4] With respect to Mother's weekday visit, the court directed as follows.

The parties may need to exercise flexibility for the weekday visit if Mother is not able to otherwise adjust her work schedule to be in Gladwyne for the after school pick up. A possible alternative may be that Father facilitates transportation of [Child] back and forth to the Ardmore residence of Mother's friend to ease the pressure of transportation for these visits on Mother.

Order, 2/2/17, at ¶ 5(d).

for the remainder of the 2016-2017 school year and changing the minor child's school location for the 2017-2018 school year as said decision is not supported by the evidence presented? Did the [t]rial [c]ourt further err in limiting [Mother's] custodial time significantly, starting in the 2017-2018 year, so that the new Order reflects far less custodial time for [Mother] than she has enjoyed since the birth of the minor child as well as limiting [Mother's] time since the schedule set forth by the [c]ourt conflicts with [Mother's] work schedule to such a degree that [Mother] is unable to exercise her limited custodial time?

II. Did the [t]rial [c]ourt err and commit an abuse of discretion when the [c]ourt failed to properly consider the factual history of this case, including the criminal conviction of [Father] for an act of violence against [Mother] at which the minor child was present, the prior December 2014 Order of the Court of Common Pleas [of] Montgomery County[,] and the August 2013 [a]greed [o]rder of the Court of Common Pleas [of] Philadelphia County?

III. Did the [t]rial [c]ourt err and commit an abuse of discretion when the [c]ourt stated that no evidence from prior to December of 2014 would be admissible and then such information was considered by the [t]rial [c]ourt informing its Findings of Fact and Conclusions of Law?

IV. Did the [t]rial [c]ourt err and commit an abuse of discretion in the [c]ourt's determination of proper venue and jurisdiction for this case as the minor child lived, by agreement of the parties, in Lancaster County for a period of time well in excess of the statutory six months and such primary residence was agreed upon by the parties to this case in August of 2013[?] Such residence was confirmed by the Montgomery County Court of Common Pleas in December of 2014. Did the [t]rial [c]ourt further err in continually denying [Mother's] request to change the venue to a more appropriate locale and then claiming that this particular issue was waived because the [t]rial [c]ourt had required [Mother] to participate in evaluations and shortlist hearings in Montgomery County in order to protect her custodial rights[?] Is it an abuse of discretion to penalize [Mother] for appearing at scheduled court proceedings when the more appropriate forum to challenge venue and jurisdiction is in the this timely-filed appeal, as one of multiple issues?

V. Did the [t]rial [c]ourt err and commit an abuse of discretion when the [c]ourt failed to consider and apply the factors for relocation of a child when the child has primarily lived, by agreement of the parties, in Lancaster County since August of 2013, and the new Order requires the relocation of the child to Montgomery County without a proper Notice of Relocation being filed by [Father] along with his Petition to Modify Custody in February of 2016[?] Although venue and jurisdiction, also at issue in this appeal, are related matters, the [t]rial [c]ourt specifically ignored the existing December 2014 Order in this case under which the minor child lived approximately 66% of the time with [Mother] in Lancaster County at the time of [Father's] February 2016 Petition to Modify. The child's primary residence was therefore Lancaster County and the effect of the Petition to Modify became a Petition for Relocation of the child's primary residence. The [t]rial [c]ourt issued several interim Orders that affected the percentage of time spent with each parent during the pendency of the February 2016 Petition to Modify, but the result of complying with those Orders should not be used as evidence that the child's time was equal with each parent at the time the initial (February 2016) Petition to Modify was filed.

VI. Did the [t]rial [c]ourt err and commit an abuse of discretion when the [c]ourt disregarded the recommendations of the [c]ourt-ordered evaluator that [Mother] should retain primary physical custody of the minor child if the parties could not agree to move closer to one another in proximity?

VII. Did the [t]rial [c]ourt err and commit an abuse of discretion in the [c]ourt's application of the custody factors found at 23 Pa.C.S.A. § 5328 in determining the best interests of the minor child as the determination was not supported by the evidence presented?

Mother's Brief, at 6-7.

We review this appeal according to the following scope and standard of

review:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However,

- 6 -

this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr.*, *supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902

A.2d 509, 512 (Pa. Super. 2006) (citing **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004)).

The Act provides an enumerated list of factors a trial court must consider when awarding any form of custody. **See** 23 Pa.C.S.A. § 5328(a)(1)-(16). Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). **See also M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013) (stating that "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors [of § 5328 (a)] are considered and that the custody decision is based on those considerations").

Instantly, the trial court set forth its mandatory assessment of the § 5328(a) best interest factors in a detailed opinion that accompanied the subject order. **See** Trial Court Opinion, 2/2/17. The court weighed subsections (1), (4), (6), (8), and (13) in favor of Father; weighed subsections (3), (5), (9), (10), (11), (12), and (15) equally between the parties; weighed subsection (2) in favor of neither party; and found subsection (14) not relevant in this case. With respect to Section 5328(a)(7), the well-reasoned preference of the child, based on the child's maturity and judgment, the court noted that the parties waived the *in camera* interview of Child, then just five years old. Upon thorough review of

the testimonial and documentary evidence, we discern no abuse of discretion.

In its opinion, the court stated that it "weigh[ed] heavily" subsection (4), the need for stability and continuity in the child's education, family life and community life. Findings of Fact Pursuant to 23 Pa.C.S.A. § 5328, 2/2/17, at 7. The court found that Child "has resided in five . . . different residences with Mother . . . [, which] is disruptive of [Child's] stability and continuity." *Id*., at 8. In contrast, the court found that Father "has resided in the same residence for nearly 4 years and [Child] is clearly completely enmeshed in his life in Father's household." *Id*., at 9.

With respect to subsection (1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, the court found that, regarding "an overall custody schedule and what school [Child] will attend[,] has created conflict and an inability for both parties to leave past incidents and litigation behind as they move forward with co-parenting [Child]." *Id*., at 1-2. However, the court found that Father "has demonstrated a greater flexibility in moving forward and considering various options to resolve conflict that arises between the parties." *Id*., at 2.

Moreover, the court agreed with the assessment of the custody evaluator, Dr. Rosenstein, as follows, in part.

> Mother acts in a "proprietary" manner toward [Child] and views herself as the "main and most important parent," while her perspective is that Father is essentially the secondary parent and should follow her lead. Mother believes that having primary

custody entitles her to have more say, even on smaller issues such as bedtime and diet which can realistically vary from one household to another.

*Id*., at 3-4. As such, the court stated that it believes Mother

would greatly benefit from individual therapy. Dr. Rosenstein stated that Mother can learn to share and this is encouraging. Addressing some of the issues contained in [this opinion], and beginning to move forward to recognize the importance of Father in [Child's] life, is ultimately in [C]hild's best interest.

*Id*., at 5-6 (footnote omitted).

With respect to subsection (8), the attempts of a parent to turn the child against the other parent, and subsection (13), the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, the court relied upon its analysis of subsection (1).

Turning to the merits of Mother's appeal, we have carefully reviewed the parties' briefs, the certified record, and the trial court's opinions filed in this matter. We conclude that the court carefully and thoroughly considered the best interests of Child in fashioning its custody award. Competent evidence supports the court's decision. We discern no abuse of discretion. Further, we conclude the well-written Rule 1925(a) opinion comprehensively expounds on all of Mother's issues, and we affirm based on that decision. *See* Trial Court Opinion, 4/17/17. Likewise, we affirm based on the court's findings addressing the § 5328(a) factors. *See* Findings of Fact Pursuant to 23 Pa.C.S.A. § 5328, 2/2/17.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/3/2017*